POWOW RIVER NATIONAL BANK & others *vs.* JOHN E. ABBOTT, administrator, & others.

Suffolk.    March 11, 1901. — June 18, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Limitations, Statute of,* Relief from special limitation of two years under Pub. Sts. c. 136, § 10. *Equity Jurisdiction. Executor.*

In a bill in equity under Pub. Sts. c. 136, § 10, seeking to enforce a claim against the estate of a deceased person on which suit had not been brought within two years from the time the administrator gave his bond, an allegation, that through mutual mistake of the administrator and the plaintiff a representation of the estate as insolvent was made so late that it was impossible for the plaintiff to present his claim to the commissioners until after the expiration of the two years, is bad, on special demurrer, for failing to allege with sufficient particularity in what the alleged mutual mistake of the plaintiff and the administrator consisted.

A creditor of the estate of a deceased intestate, who has failed to bring suit on his

claim within two years from the time that the administrator of the estate gave bond for the discharge of the trust, is not entitled to relief under Pub. Sts. c: 136, § 10 on the ground that he refrained from bringing suit at the suggestion of the administrator of the estate relying on certain statements made in good faith by the administrator.

BILL IN EQUITY by certain creditors of the estate of Allen S. Weeks, deceased intestate, under Pub. Sts. c. 136, § 10, praying to be allowed to share in the assets of that estate and be given judgments for the amounts of their respective claims against it, they having failed to bring suit upon their claims within two years from the time that the administrator of the estate gave bond for the discharge of his trust, filed August 28, 1900.

The defendants were John E. Abbott, administrator of the estate of Weeks, and four creditors whose claims had been allowed. The defendants, except the administrator, demurred to the bill, among other grounds, for want of equity and because it failed to allege with sufficient particularity in what the alleged mutual mistake of the plaintiffs and the defendant Abbott consisted.

The bill alleged, that Weeks died on August 8, 1897, and on August 19, 1897, the defendant John E. Abbott, an attorney and counsellor at law, was appointed administrator of the estate and on the same day gave bond as such administrator; that the defendant administrator found the estate to be greatly confused, and that there were many questions of fact and law requiring much time for their adjustment and requiring the prosecution and defence by him of sundry suits concerning the title to a part of the assets, and found, during the early part of his administration, that the estate was insolvent and insufficient to pay the claims of creditors in full; that the plaintiffs presented their claims to the defendant administrator after the expiration of one year and before the expiration of two years from his appointment; and that the defendant administrator then informed the plaintiffs that the estate was insolvent, that there were many collateral matters to be adjusted by him, that he was engaged in considerable litigation involving the assets of the estate, and that it was not wise, nor would it be beneficial to the creditors, nor to the estate, to have a multiplicity of suits instituted for the collection of the claims of the plaintiffs, that he intended to represent the

estate insolvent, so that commissioners, to whom the claims of the creditors might be presented, would be duly appointed by the Probate Court, that the rights of the creditors would thus be protected, and that for that reason it would be a waste of the assets to bring suit against the estate; that the defendant administrator intended to represent the estate insolvent, and that notice of the fact should be received by the plaintiffs, giving them ample time in which to present their claims to the commissioners before the expiration of the period limited by the statute, but that, through mutual mistake of the administrator and of the plaintiffs, such representation was made so late that it was impossible for the plaintiffs to present their claims to the commissioners until after the expiration of two years from the time when the administrator filed his official bond; that the plaintiffs, and each of them, relying upon the statements of the defendant administrator, and being desirous not to increase the costs of the estate, and relying upon the insolvency of the estate and upon its due representation as insolvent, and upon the appointment of commissioners in due course by the Probate Court, and notice to them of such appointment, refrained from bringing suit, and had not before the date of the filing of the bill brought action upon their several claims; that on August 17, 1899, the defendant administrator represented the estate insolvent, and on the same day a warrant was issued by the Probate Court appointing the defendants C. P. Weston and F. K. Linscott commissioners; that the warrant did not reach the commissioners until after August 19, 1899, two years from the date when bond was given by the defendant Abbott as administrator, and the commissioners qualified as such on September 21, 1899; that meetings of creditors were held by the commissioners on October 14, 1899, and February 7, 1900, and the claims of the plaintiffs were found to be just claims and correct as to amount, but upon the objection of the defendants Ruggles, Chase, and Thomas, and their attorneys, the claims of the plaintiffs were not allowed; that the commissioners, on July 30, 1900, by permission of the Probate Court, filed their report, stating therein the reason for which they disallowed the plaintiffs' claims, namely, that their claims were barred by the statute of limitations, no suit having been brought on them, nor

presentation made of the claims to the commissioners within two years from the time when bond was given by Abbott as administrator; that the only claims allowed by the commissioners were those of the four respondents, Ruggles, Chase, Emeline Thomas, and Harry Thomas, amounting in the aggregate to $37,854.26 ; that the total assets of the estate, without deducting charges and commissions, amounted to about and not exceeding $15,000 ; that the claims of the plaintiffs and of those creditors in like position, being twelve in number, amounted to $82,902.70 ; that at the time of bringing the bill no order of distribution of the estate of Weeks had been made by the Probate Court and no distribution had in fact been made; that the entire estate would therefore in any event be divided among creditors, and that unless the relief prayed for was granted the whole estate would be divided among the four creditors whose claims aggregated $37,854.26, to the exclusion of the twelve creditors whose claims aggregated $82,902.70.

The case came on to be heard on the bill and the demurrers of the defendant creditors before *Lathrop*, J., who, at the request of the parties, reserved it for the consideration of the full court. If the demurrers were sustained the bill was to be dismissed; otherwise the cause was to stand for further hearing.

The case was argued at the bar in March, 1901, and afterwards was submitted on briefs to all the justices.

*S. Lincoln*, (*J. T. Choate* with him,) for the plaintiffs.  *Wells* v. *Child*, 12 Allen, 333, was decided long before the court obtained general equity powers, and when its equity jurisdiction was based on many separate grants from the Legislature, which were construed narrowly.  Since the granting of general equity powers in 1877, a marked change may be seen in the attitude of the court on equitable questions.

In no case decided before the court obtained full equity powers had a bill under the Pub. Sts. c. 136, § 10, been sustained.  Since that time three cases have arisen, and in each case the relief was granted.  *Morey* v. *American Loan & Trust Co.* 149 Mass. 253.  *Knight* v. *Cunningham*, 160 Mass. 580.  *Ewing* v. *King*, 169 Mass. 97.

It is true that none of these cases having in view their facts overrule the case of *Wells* v. *Child*, the early case cited above,

but they do overrule that case on the proposition that relief under the statute can be had only when there is such fraud, accident or mistake as would be a ground for equitable relief under general equity powers. *Knowlton*, J., speaking for the court in *Ewing* v. *King, supra,* says that the statute is remedial, and expressly states that the operation of the statute is not limited to those cases where the failure to sue seasonably was due to such fraud, accident or mistake as would be a ground for equitable relief if there were no statute. Furthermore, it would seem that something more than general equity powers are required to sustain the case of *Knight* v. *Cunningham, supra.*

That this statute adds something to the general equity powers to relieve against the statute of limitations is settled by the late cases in this court cited above. What, then, does the statute mean ? It must mean what it says, and that is that when justice in any particular case requires the setting aside of the statutory bar, the court will do so. It leaves the application of the special statute of limitations discretionary with the court.

*G. A. A. Pevey*, for the defendants Thomas.

*H. K. Brown*, for Anna H. Ruggles.

*E. B. Gibbs*, for Charles Chase.

HAMMOND, J. It is plain that under the adjudications made by this court in cases which have arisen under this statute these plaintiffs are not entitled to the relief which they seek. *Waltham Bank* v. *Wright*, 8 Allen, 121. *Jenney* v. *Wilcox*, 9 Allen, 245. *Wells* v. *Child*, 12 Allen, 333. *Sykes* v. *Meacham*, 103 Mass. 285. They knew of the death of Weeks, and of the appointment of the administrator of his estate. They must be assumed to have known that, whether the estate was declared insolvent or not, their claims would be barred, unless within the statutory period of two years they commenced legal proceedings before the proper tribunal to enforce them, and that the administrator had no power to waive for the estate the benefit of the statute. They knew all the facts respecting their rights. No fraud or accident is alleged; and, while there is a vague allegation of mistake, there is nothing to show the nature of the mistake, and, as against a special demurrer, that the bill fails to allege with sufficient particularity in what the mistake consisted, the allegation must be held to be insufficient.

The delay was not caused by their ignorance of a fact which they did not suspect existed and which they had reasonable ground to believe did not exist, as was the case in *Morey* v. *American Loan & Trust Co.* 149 Mass. 253, and *Ewing* v. *King*, 169 Mass. 97, cases upon which the plaintiffs rely but which in this material respect are distinguishable from this. Nor was the delay agreed to by all parties interested in the estate, including heirs and creditors, as in *Knight* v. *Cunningham*, 160 Mass. 580. The plain, simple case shown by the bill is that the plaintiffs, knowing fully their rights and the time within which they must assert them by legal proceedings, relied upon certain statements of the administrator, about whose good faith, however, we do not understand any question is made, and allowed the time to go by until it was too late.

The case must stand in the same class with those named in the first paragraph of this opinion. The demurrer must be sustained.                                    *Bill dismissed.*

Justices KNOWLTON, MORTON and BARKER dissent from this opinion.